# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Staff Sergeant JOSHUA R. HONEYCUTT
### United States Air Force

### ACM S32214

### 26 August 2015

Sentence adjudged 17 December 2013 by SPCM convened at Goodfellow Air Force Base, Texas. Military Judge: Wendy L. Sherman (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 4 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Thomas A. Smith.

Appellate Counsel for the United States: Major Jason M. Kellhofer; Captain Richard J. Schrider; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

The appellant was tried at a special court-martial before a military judge sitting alone. In accordance with his pleas and pursuant to a pretrial agreement, he was found guilty of wrongfully using oxymorphone, marijuana, oxazepam, lorazepam, and hydrocodone[1] and wrongfully possessing hydrocodone, all in violation of Article 112a,

---

[1] The wrongful uses of oxymorphone, marijuana, oxazepam, and lorazepam each involved one specification, and there were two specifications of wrongful use of hydrocodone.

UCMJ, 10 U.S.C. § 912a.[2]  The court sentenced the appellant to a bad-conduct discharge, confinement for four months, and reduction to E-1.  The convening authority approved the sentence as adjudged.

Before us, the appellant argues that his pleas to wrongful use of oxymorphone and oxazepam are improvident.  We disagree.

*Background*

The appellant had an extensive history of prescription drug use for back pain and other conditions.  In April 2012, he self-reported opiate dependence to his command and was admitted to a civilian hospital.  In September and October 2012, he was treated in a second civilian hospital for pain management and prescription drug dependence.

In March 2013, military medical providers were concerned about the appellant's prescription drug use.  They placed him on a "single physician profile"—requiring that all his medication be prescribed by only one doctor and restricting his ability to obtain medications at off-base pharmacies.  Despite the efforts to treat and prevent his abuse of drugs, the appellant unlawfully used prescription medication and marijuana between August and October 2013.

*Providence and Factual Sufficiency of the Plea*

On 30 August 2013, the appellant consented to providing a urine sample, which ultimately tested positive for oxymorphone at a level above the Department of Defense cutoff.  A month later, the appellant underwent another urinalysis which tested positive for oxazepam at a level above the cutoff.  Based on these test results, the appellant was charged with wrongfully using "oxymorphone, a Schedule II controlled substance," and "oxazepam, a Schedule IV controlled substance."  As reflected in the charges, these two substances are found in Schedules II and IV of the Controlled Substances Act[3], respectively, and thus a military member can ingest them and be charged with improperly using them.

The appellant did not, however, directly ingest these two substances, via pills or otherwise.  Instead, according to the stipulation of the parties, the appellant knowingly and wrongfully took pills of oxycodone and Valium, and those substances "break[] down in the human body as" oxymorphone and oxazepam, respectively.

---

[2] In pleading to both wrongful use of oxazepam (Additional Charge, Specification 1) and wrongful use of lorazepam (Additional Charge, Specification 2), trial defense counsel erroneously stated, "GUILTY, excepting the words 'on divers' and NOT GUILTY to . . . the excepted words,"--thereby failing to except the word "occasions."  The military judge thereafter found the appellant "GUILTY, excepting the words 'on divers *occasions*.'"  (Emphasis added.)   It is clear from the discussions between the military judge and the parties that trial defense counsel meant, and was understood by all parties, to plead: "GUILTY, excepting the words 'on divers *occasions*.'"  To the degree there was any error in the entry of pleas and findings, we find it harmless.
[3] Narcotic Addict Treatment Act of 1974, Pub. L. No. 93-281, 88 Stat. 124.

During the providence inquiry involving the oxymorphone specification, the appellant was told the elements of the offense were that (1) he used oxymorphone, a Schedule II controlled substance; (2) he knew he used the substance; (3) he knew the substance he used was oxymorphone or of a contraband nature; and (4) the use was wrongful. The stipulation of fact stated the appellant knowingly and wrongfully used "Oxycodone, a schedule II controlled substance which breaks down in the human body as Oxymorphone" and that he was aware of Oxycodone's contraband nature. In his providence inquiry, the appellant told the military judge he understood oxymorphone was "a derivative of the drug [O]xycodone which is the drug that I ingested." The appellant then described receiving from an acquaintance a pill and ingesting it, after the appellant had determined it was Oxycodone by researching it on the Internet.

The appellant then had the following exchange with the military judge:

[Military Judge]: [T]he charge says wrongfully use oxymorphone. You . . . mentioned . . . you used oxycodone, but . . . you believe that oxymorphone, as well, is a controlled substance and is a metabolite of oxycodone, is that correct?

[Appellant]: Oxymorphone is a metabolite of oxycodone from what I understand.

[Military Judge]: So would it be accurate then to say that you wrongfully use[d] oxymorphone?

[Appellant]: [(After consulting with defense counsel)] Yes, ma'am.

[Military Judge]: Because it is a derivative of oxycodone, is that correct?

[Appellant]: Yes, ma'am.

[Military Judge]: . . . [Y]ou're pleading guilty to wrongful use of oxymorphone, but you have no doubt in your mind that you are, in fact, guilty of that use, is that correct?

[Appellant]: Yes, ma'am.

[Military Judge]: Based on the circumstances and the use of the oxycodone, right?

[Appellant]: Yes, ma'am. . . .

[Military Judge]: And as we talked about before, oxymorphone, you know that to be a Schedule II controlled substance?

[Appellant]: Yes, ma'am. . . .

[Military Judge]: . . . So do you admit, therefore, that . . . you used oxymorphone, a Schedule II controlled substance?

[Appellant]: Yes, ma'am.

[Military Judge]: Do you agree that you actually knew you used the substance?

[Appellant]: Yes, ma'am.

[Military Judge]: Do you admit that you actually knew that the substance you used was oxymorphone or of a contraband nature?

[Appellant]: Yes, ma'am.

Similarly, during the providence inquiry for the oxazepam specification, the appellant was told the elements of the offense were that (1) he used oxazepam, a Schedule IV controlled substance; (2) he actually knew he used the substance; (3) he actually knew the substance he used was oxazepam or of a contraband nature; and (4) the use was wrongful. The stipulation stated that the appellant knowingly and wrongfully used "Valium which breaks down in the human body as Oxazepam, a schedule IV controlled substance" and that he was aware of the contraband nature of Valium. In his providence inquiry, the appellant told the military judge he found nine Valium pills while cleaning his truck and ingested them. These pills had been prescribed to him some time earlier but the appellant knew it was wrong for him to take them at this later point. He told the military judge Valium is a Schedule IV controlled substance that breaks down in the human body and is detected as oxazepam during urinalysis testing.

The following exchange then occurred during the providence inquiry:

[Military Judge]: . . . [D]o you admit . . . you used oxazepam, a Schedule IV controlled substance?

[Appellant]: Yes, ma'am.

| [Military Judge]: | And do you admit that you actually used the substance? |
|---|---|
| [Appellant]: | Yes, ma'am. |
| [Military Judge]: | And do you admit that you actually knew that the substance you used was oxazepam? |
| [Appellant]: | Yes, ma'am. |
| [Military Judge]: | Or of some contraband nature? |
| [Appellant]: | A derivative of. |
| [Military Judge]: | And do you admit that the use by you was wrongful? |
| [Appellant]: | Yes, ma'am. |

The appellant now contends his guilty pleas are improvident because he intended to use, and actually used, oxycodone and Valium pills rather than the charged substances.[4]

We review a military judge's decision to accept a guilty plea for an abuse of discretion and review questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Id.*; *see also United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991) (stating that a plea of guilty should not be overturned as improvident unless the record reveals a substantial basis in law or fact to question the plea). The appellant maintains the burden to demonstrate a substantial basis for questioning the plea. *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

The military judge may consider both the stipulation of fact and the inquiry with the appellant when determining if the guilty plea is provident. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). "In reviewing the providence of [the a]ppellant's guilty pleas, we consider his colloquy with the military judge, as well any inferences that

---

[4] The appellant also contends the evidence is factually insufficient to support his convictions for these uses of controlled substances. However, when, as here, an appellant pleads guilty, "the issue must be analyzed in terms of providence of his plea, not sufficiency of the evidence." *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996).

may reasonably be drawn from it." *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007) (citing *United States v. Hardeman*, 59 M.J. 389, 391 (C.A.A.F. 2004)). A military judge abuses her discretion when accepting a plea if she does not ensure the accused provides an adequate factual basis to support the plea during the providence inquiry. *See United States v. Care*, 40 C.M.R. 247, 250–51 (C.M.A. 1969). This is an area in which the military judge is entitled to significant deference, given the often undeveloped factual record in such cases as compared to that of a litigated trial. *Inabinette*, 66 M.J. at 322.

Article 112a, UCMJ, is entitled "Wrongful use, possession, etc., of controlled substances" and states, in pertinent part, "Any person . . . who wrongfully uses . . . a substance described in subsection (b) shall be punished as a court-martial may direct." Subsection (b) lists three categories of covered substances: (1) those listed in the text of the article; (2) those found on a schedule as prescribed by the President; and, as applicable here, (3) those found on Schedules I through V of the Controlled Substances Act. *See United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014).

The Manual for Courts-Martial delineates two elements for this offense: (1) use of a controlled substance, (2) that is wrongful. *Manual for Courts-Martial, United States,* Part IV, ¶ 37.b.(2) (2012 ed.). The President has defined "use" as "inject[ing], ingest[ing], inhal[ing], or otherwise introduce[ing] into the human body, any controlled substance." *Id.* at ¶ 37.c.(10). To be convicted of wrongful use of a controlled substance, the accused must know of the presence of the controlled substance and know of its contraband nature. *Id.* at ¶¶ 37.c.(5) and (10); *United States v. Mance*, 26 M.J. 244, 253–54 (C.M.A. 1988).

Here, the appellant admitted that he knowingly ingested two controlled substances (oxycodone and Valium) and did so knowing of their contraband nature. These admissions are sufficient to sustain guilty pleas to using those two drugs. However, the question before us is whether his admissions are sufficient to sustain his pleas to using two other controlled substances (oxymorphone and oxazepam).

The accused need not "have been aware of the precise identity of the controlled substance [to be guilty of wrongful use], so long as he is aware that it is a controlled substance." *Mance*, 26 M.J. at 254. He need not know "the exact pharmacological identity of the substance" he used so long as he knew his use of the substance he ingested was prohibited by law. *United States v. Stringfellow*, 32 M.J. 335, 336 (C.M.A. 1991). In light of that, if an accused believes he used controlled substance X when, in fact, he used controlled substance Y, he can be convicted of wrongfully using controlled substance Y as he had adequate knowledge to establish wrongfulness. *Id.*; *Mance*, 26 M.J. at 254.

Using that logic, we clearly could find the appellant's guilty pleas provident for wrongful use of oxymorphone and oxazepam if he used those drugs when he erroneously

thought he was using two other controlled substances. Although that is not the precise fact pattern here, we find similar reasoning could be used to find the appellant guilty of wrongfully using oxymorphone and oxazepam even though he knew he was actually using two other controlled substances. We recognize that, in this case, the oxymorphone and oxazepam are present in the appellant's urine because they are metabolites of the controlled substances he actually ingested (oxycodone and Valium) and not because he ingested pills containing oxymorphone and oxazepam themselves. We nonetheless conclude the appellant's guilty plea to using these controlled substances is provident.[5]

The concepts found within *Mance* and *Stringfellow* were explained to the appellant during the providence inquiry.[6] He made sufficient admissions to satisfy the

---

[5] Our research discloses no military case law where an accused has been charged with using the metabolites oxymorphone or oxazepam when the wrongful use more directly involved the parent drug oxycodone or Valium. The Court of Appeals of Indiana, however, addressed an issue closely analogous to the one before us now. In *Buckingham v. State of Indiana*, No. 38A02-0610-CR-948, 2007 Ind. App. Unpub. LEXIS 1787 (Ind. Ct. App. 5 July 2007), the defendant gave Valium to another man who subsequently died. During an autopsy, his blood was found to contain oxazepam, and a toxicology expert testified that Valium breaks down into this substance after being ingested. *Id.* at *3. However, the defendant was charged with and convicted of knowingly and intentionally delivering oxazepam, not Valium. *Id.* at *7. On appeal, he argued that, because his delivery of Valium was complete upon handing the drug to the recipient and because it does not break down to form oxazepam until the drug is ingested, the state's evidence was insufficient to prove he delivered oxazepam. *Id.* at *8. In response, the Court of Appeals of Indiana declared:

> It would, perhaps, have been preferable for the State to have charged [the defendant] with delivery of [Valium] rather than Oxazepam. But … both drugs are Schedule IV controlled substances and neither holds a potential for a greater sentence or more serious conviction than the other. It is undisputed that [Valium] becomes Oxazepam when ingested. It is also undisputed that [the defendant] delivered [Valium] to [the recipient]. Under these circumstances, we find that [the defendant] was not prejudiced when the State charged and the jury convicted him of dealing in Oxazepam, a Schedule IV controlled substance and that the State presented sufficient evidence to support the convictions.

*Id.* This unpublished decision from the Court of Appeals of Indiana is, of course, not binding upon us. We agree, however, with its logic—and reach a similar result in our decision today. Moreover, consistent with the admonition implied by the court in *Buckingham*, we advise Air Force prosecutors that—when the evidence shows oxycodone and Valium were the drugs directly taken by the accused—it would be preferable to charge the use of oxycodone and Valium rather than their derivative metabolites. If this situation becomes apparent as part of a guilty plea, the parties can agree that the specification be modified accordingly. *See* Rule for Courts-Martial (R.C.M.) 603(a).

[6] The military judge explained:

> You may not be convicted of the use of a controlled substance if you did not know you were actually using the substance. Your use of the controlled substance must be knowing and conscious. . . . It is not necessary that you were aware of the exact identity of the contraband substance. The knowledge requirement is satisfied if you knew the substance was prohibited. Similarly, if you believe the substance to be a contraband substance, such as cocaine, when,

elements of wrongful use of a controlled substance—he knowingly ingested two substances listed in Schedules II and IV of the Controlled Substances Act, and his use of those substances was wrongful. His colloquy with the military judge demonstrates that he understood factually and legally why his conduct was unlawful. He also clearly understood how the urinalysis results related to his use of these substances and he did not, and is not now, alleging that he was not guilty of using controlled substances. He also admitted that oxymorphone and oxazepam are themselves controlled substances, in addition to being metabolites of oxycodone and Valium, and agreed he was guilty of using them. Under these circumstances, we find the appellant's guilty pleas to using oxymorphone and oxazepam provident.[7]

## *Conclusion*

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

in fact it is heroin, you had sufficient knowledge to satisfy that element of the offense.

[7] The government, in the alternative, urges us to modify the findings to reflect the appellant is guilty of knowingly and wrongfully using oxycodone and Valium. We question our authority to do so. *See United States v. Lubasky*, 68 M.J. 260, 265 (C.A.A.F. 2010) (holding that the authority to modify a charge through exceptions and substitutions under R.C.M. 918(a)(1) "is directed at the factfinder" and is distinct from the more limited authority of an appellate court to approve a lesser included offense under Article 59(b), UCMJ, 10 U.S.C. § 859(b), and declining to modify a larceny specification by changing the identity of the theft victim).